Sales Practices and Products Liability Litigation Matter, this being at 18-2259, 18-2656, Ms. Brennan. Good morning. May it please the Court, Hannah Brennan on behalf of the plaintiffs. And if I may, I'd like to reserve three minutes for rebuttal. Granted. Plaintiffs are here today because GSK executed one of the largest healthcare frauds in U.S. history. And it accomplished this fraud through secrecy. By selectively publishing the results of key clinical trials while concealing others entirely, GSK transformed a drug of questionable efficacy and no greater safety than the two other leading comparators into a drug that was a $3 billion a year blockbuster. Which kind of analysis do you want us to apply here, a common law analysis or a First Amendment analysis? Both. Why both? Why are both necessary? If you prevail on one, then there's no need to reach the other, is there? That's right. So we submit that... as not only unnecessary, but as really perhaps not subject to constitutional avoidance as we generally look at it. But as some of our cases have indicated, that for prudential reasons, we not reach the constitutional piece here. Yes, I agree, Your Honor. You don't need to reach the First Amendment issue here. But I will point out that this Court has reached the First Amendment issue before when it didn't have to. In Publicker, this Court specifically said we can... Publicker was about an actual in-court proceeding, wasn't it? Yes, but also the record thereof. And it also involved media interests as well, did it not? I don't know that Publicker involved media interests. I'd have to look into that. But here we do have an amicus that has shown that the public is very interested in the proceedings here. Our amicus here has said that researchers, physicians, the public at large would like access... Even if that's the case, and I'm not going to dispute that, why isn't the common law right of access adequate for purposes of protecting everyone's interests here? I think the common law right of access is adequate here. We submit that under the common law right of access, these... So let's look at the basis of your appeal. What the District Court did and what the District Court did not do. With particular focus on the July 24, 2018 order. It doesn't contain much analysis, does it? No, it does not. In fact, I'd like you to tell me what you think it says and what you think it relies upon. Because it cites Pansy. It adverts to the common law right of access. But it doesn't really tick through an analysis of the common law right of access. At least it seems that way to me. It seems that way to me as well, Your Honor. So in Lucidia, this court instructed that the District Court must go through a document-by-document review. That was a standard this court put forward. And that didn't happen here as far as we know, did it? No, we don't know. Should District Courts in a case of this magnitude be forced to go through a document-by-document review? I would submit that GSK should be forced to go through a document-by-document review so the District Court doesn't have to. Here the real error lies with GSK. GSK did not present declarations that do a document-by-document review. Almost like a privilege law is what you're looking at? Yeah, almost like that. So I would submit that GSK would have offered this court far fewer documents under seal had it been put to this actual burden of doing a document-by-document review. Did you folks object to the sealing protocols in the District Court? We don't object to the sealing protocol under PTO 10 because that governed unfiled discovery materials. These are summary judgment materials now. And what I'd really like to point out here is the plaintiffs have gone through and done a document-by-document review here. It's not clear that GSK ever has. And when you do that document-by-document review, you find documents in this record that have no right being sealed. For example, if you flip to page SA 0993, this is a document that was publicly presented in a continuing medical education course to doctors. This is a pamphlet that doctors can walk out of that course with. There's no real grounds for GSK to even take that document out of the public record. That it is. Let me refer to something that perhaps should have been a starting point, at least a starting point for me. Because we are reviewing summary judgment, there is or should not be any disagreement that the common law right of access applies to summary judgment proceedings. Correct? Correct. That is settled. And we do know that the district court, whose order we are reviewing here, at least adverted to the public's right of access and to the common law right of access. But who has the burden? GSK does, Your Honor. And did the district court place, put GSK to that burden? No. I would submit here that the district court has erred because it has put the plaintiffs to that burden. If you look at the district court's opinion, it says the plaintiffs have not articulated substantial countervailing interests other than the public's broad right to access. Other than. Yes, exactly. That's my favorite line here. So what this means is the district court is looking for the plaintiffs to articulate some sort of interest in the contents of the documents. That's the Rule 26 standard. Under Rule 26, plaintiffs don't have an inherent interest in private discovery matters exchanged between parties, which is why Rule 26 asks what are the public's interests in the contents. Here, under the common law, the public has an inherent interest because their interest isn't just in the contents of the documents, it's to access to the courts themselves. So the plaintiffs do not have to justify any interest in these documents and the court should not have put the plaintiffs to that burden. It also just shows that the court was really applying the Rule 26 standard and not the common law standard. And you can tell because not only is the court listing the pansy factors, it's then citing Glenmai, which is a Rule 26 case. It's not a common law case. And the district court here is also considering other factors that this court has very specifically and repeatedly said in Littlejohn, in Publicker, in Bank of America, cannot be considered in a common law right of access analysis, such as embarrassment to a corporate defendant, such as the motives of the parties, such as the public's interest in the documents. Is there a standing issue you need to address? I'm happy to address it. So I don't think there's any standing issue, and I think that's true for three reasons. So the first point I want to make here is the class representatives represent a class of 50,000 health care plans that have no access to the documents at issue. This court in Neal v. Volvo recognized there's a number of circumstances in which courts can look past the standing of the named plaintiff to whether the class has a real injury here. So under the doctrine of associational standing, the organization itself doesn't have standing to bring a claim, but it represents members that have a real interest in the document. That's the situation we have here. The plaintiffs would be in untenable catch-22 if every time the class representative gained access to a document, it deprived the class of access to the same document. And there's another point I'd like to make here, which is that GSK submits to this court that there needs to basically be a journalist or an intervener in order for the public right of access to be protected. That's not true. In this court's decision, incendent, there was no intervener, and the party benefiting from the access didn't even raise the issue itself. This court raised the issue because it said, and I want to quote here, this court has an inherent supervisory power arising out of Rule 26 to clarify rules for district courts governing the district court's power to enter confidentiality orders at any stage of the litigation. So this court can clarify the rules for district courts, which I believe it should, because clearly district courts had some confusion over this issue. And that's partly why I submit that, why we asked this court to consider the First Amendment issue because we want greater clarity for the district courts. You've relied, and you've cited for us here, incendent, and incendent was also a class action case, correct? Yeah, that's right. Is there something about the nature of a class action that makes a public's right of access more compelling than just an A versus B litigation? Yes, I believe so. Have we said that? You did incendent, yes. I think that that's really important here. The class reps serve to represent the interests of the class, and the class must be protected. And incendent basically recognizes how important it is that the interests of the class, because they stand in a slightly different posture than the public. They have a true interest in this case, but they're not at large. Incendent was a common law right of access case. It did not decide the question on the First Amendment. No, it did not need to, just as in this case. One more point I'd like to make on the standing point is that other circuits have recognized that where there's an amicus, they address the First Amendment and common law rights of access issue. So in Brown v. Williamson, the plaintiff there, the FTC, did not even ask for this issue to be addressed. The amicus brought it in, and then the court addressed the issue. Here we have an amicus that's asking you to address this issue in order to provide clarity to the district courts. Did we look at the standing question differently with respect to the common law right of access as opposed to a First Amendment, right? So GSK does not argue that we don't have standing to raise the common law right of access. That's why I asked. Yeah, they don't argue that at all. Any questions? Thank you. We'll have you back on rebuttal. Thank you very much. Mr. Fahy. May it please the court. My name is Sean Fahy. I represent GlaxoSmithKline. And with your permission, Your Honor, I might want to start with the standing questions that were just discussed, because I think I just want to lay a factual predicate that maybe we have some disagreement about. Before you do that, could I just establish that you agree that it's well settled that the common law right of access applies to the summary judgment proceedings here and elsewhere? I do, but I want to make an important distinction or clarification with respect to that issue, because if we're talking about documents that were properly submitted as part of a summary judgment issue, then I have absolutely no dispute with what you just said. I absolutely agree with it. But what has sometimes happened in mass tort litigation and certainly happened in connection with this mass tort litigation is that when a summary judgment motion is filed, the kitchen sink gets dumped in, and all sorts of irrelevant matters get thrown into the mix. So just to give you an example, the 700-page Dr. Abramson report is submitted as, quote, evidence, when it would never be admitted and filed. You're referring now to what, appendices that are filed? No, the documents that issue in this challenge right now. You referred to in summary judgment proceedings generally, at least that's how I took you to be arguing, the kitchen sink gets thrown in, and it seems to me that summary judgment proceedings, as I saw them when I was a district judge and as I see them on review, are much better structured than that. One may try to throw in the kitchen sink in terms of what goes into an appendix, but the drawing of issues is a much more disciplined process. So I'm trying to get to what it is. Yeah, let me make the point hopefully a little clearer. In the context of this specific summary judgment motion that you just heard argument on before, the plaintiff submitted as an exhibit to that summary judgment motion, and one thing they're saying now is public because of that, is a 700-page expert report that has no evidentiary value by any means. Can't a document-by-document review, which appears not to have occurred in this case, address that concern? I think it can, but I don't agree that a document-by-document analysis was not done. When you look at our materials that we submitted as part of the confidentiality order, it included a declaration that described exactly the categories of documents and the types of documents, whether they were study reports, marketing materials, and then we separately had an appendix that attached each document by document to those categories. We certainly have no analysis by the district court, however, to suggest that document-by-document description and designation was taken into account in terms of what was ultimately decreed, right? I think that it's fair to say that in the actual order itself, it does not describe on a document-by-document analysis. That's all we have. That is, and one thing that I think... A one-paragraph order with a footnote. I understand, Judge, Your Honor, and one of the things that I think, perhaps just for some context, this litigation had been going on for 10 years by the time the judge issued this order. This was not the first time she dealt with confidentiality issues. It's not the first time she stated her opinion on a document-by-document analysis. Hundreds of documents had been challenged. That's why that first declaration, the plaintiffs are so, you know... You have a very good, very experienced trial judge here who was quite familiar with this litigation, which Avandia kind of is the many heads of Hydra, in fact. And, Your Honor, one thing that's important, what the judge also saw over those 10 years was situations where people saw things in the public and made really bad decisions, where 20% of the people that were on Avandia went off Avandia because of the media attention and never went back on a different medication. So that's in her brain. Is the continued media attention what's at the heart of this dispute over documents? I think it's a combination of a couple things. Media attention is certainly one of those. And, you know, we talked about and discussed in the first argument about Study 11. And there were media attention about how Study 11 absolutely showed Avandia caused heart attacks. Study 11 absolutely had nothing to do with Avandia. Avandia wasn't even studied in Study 11. This is all an appeal about sealing. Doesn't the public have a particular interest in having access to litigation about alleged pharmaceutical malfeasance? Yes, and I think they have the access to the appropriate materials from that decision. Judge Roof identified, I think, about six documents in her order that were submitted out of all the voluminous things that the plaintiff submitted. She described them in detail. She literally quoted documents. The public argument on the summary judgment was open... The public entitled to six documents? No, I think the public was... She just told us. With respect to the preemption... I think you just said that... No, I'm saying... The appropriate analysis was done in six documents were disclosed to the public. No, what I'm saying is the judge, when the judge decided the preemption issue, she only relied on six of all the documents that they throw in. In their kitchen sink, they dumped in all sorts of documents. And she thought there were only about six or seven that were relevant to her decision. She described them in detail, and the public has access to all that information. And if that was not the only thing... I mean, one of the... Vandia, as you said, the Hydra, the media... There were thousands of heads of Hydra on the media. And I think Judge Roof saw firsthand how damaging that kind of information in an unfiltered way thrown out in the media can be. People are making horrible businesses. I mean, horrible... But we've said in Westinghouse and other cases that harms the public image are not a basis to seal court records. It has to be something that causes you competitive harm instead of harm to your image. Yes, and, Your Honor, we are not saying that the only reason you should remain... keep these documents that were not really part of the summary judgment record properly sealed. It's because of a couple things. First, that the competitive disadvantage in the declarations that we submitted to Judge Roof lay out that competitive disadvantage in great detail. It's not something that goes away just because of the passage of time. It's something that builds up over time. It's actually the exact opposite of what plaintiffs are saying. And then you look at the harm to the patients, not to GSK. But when 20% of the people that need diabetes medicine don't go back on another diabetes medicine because they don't trust companies anymore, that's not GSK harm. There's other medications out there, I mean, at least... Right, but when you see... you hear Avandia, you hear Actos, you know, people complaining about metformin and sulfonylurea, people make bad treatment decisions when they don't consult with their doctors and they react to distorted views in the media. And Judge Roof saw that firsthand. Mr. Fahey, I... Sorry to interrupt, but I'm actually trying to help you because I think you started out wanting to address a standing issue, and I... I have a question on that. Have we ever denied parties' arguments to seal records on the basis of standing? Have you ever denied a party's... Well, I think there were times when you say that a First Amendment right can't be brought. I don't know of a common law right of access here. But here's the issue with the standing issue.  Do class members have access to the documents? The absent class members could have access to the documents under PTO 10. They just never bothered to ask for it. So the notion that somehow there's this... And you talked earlier about in a class situation, is it a little bit different? In some cases, it may be, but it doesn't have to be... So then what's the purpose of the motion to seal? The purpose of the motion to seal... Can I just finish my standing point? Because I'm not sure if I made it clear enough. In PTO 10, there is a provision in paragraph 6 that says if people who are not part of the protective order want access to the documents, all they have to do is come forward and they sign a statement that basically says they're going to continue to treat those documents confidentially. So there's no one being prevented, whether they're absent class members or otherwise, from having access if there's a proper purpose for them having access. And I would concede that anybody who's an absent class member has an absolute right to these documents. So the class is not being prevented from seeing anything. PTO 10 provided the avenue for that. So you're really... Can we look beyond the class? I don't know. If you had someone before you that's beyond the class, certainly. But they're not here. What do you make of the amicus brief? I think the amicus... If we want to create the Fourth Circuit, I really can't speak as to why they decided to bring an amicus person, but if you're looking at whether Judge Roof did the right thing or not, the amicus was not in front of Judge Roof. And so the fact that they're bringing them in now is almost a concession that they didn't have the standing to really make the arguments they wanted to make with Judge Roof. So now I can ask, what was the purpose of the motion to seal? The purpose of the motion to seal in this circuit or in the District Court? In this case. Well, the purpose was that we viewed for three things could potentially happen. First, we thought that when they're dumping this kind of information in that has no relevance to the summary judgment issues, there's an ulterior motive at play. And putting aside what the ulterior motive of the plaintiff might be, we saw in the past that you have competitive injury when that kind of... I mean, I don't know if you looked at this stuff, but it is just page after page after page about, you know, quoting documents and making, frankly, ridiculous arguments, if you know the record. But that would be out there in the public. And then we would then have to go out with an equal amount. Let's go back to square one. Because we know going all the way back to Republic of the Philippines that the company's public image, if it's the company's public image that is at stake, words of that opinion are, that is not enough to rebut the presumption of access. I would absolutely agree with you. That's not the only thing we're hearing about. Okay. And I assume that would be your response. So why wouldn't a document-by-document review by a court, by a master, by whomever the court chose to have conduct the review, be able to address those other factors and isolate out whether or not it's just a concern over public image of the company that's at stake? Well, Your Honor, that's exactly the procedure that Judge Rupert followed in the past and had given parties tons of guidance on. We had Special Master Merenstein involved in those issues, and the plaintiffs here had access to all that information. They may even have been at the arguments. I don't remember. I believe Ms. Brennan just suggested that it's on GSK to do this document-by-document review. We did. Hypothetically speaking, if we send this back for a common law right-of-access type review, who should do the review? I believe that we should provide the information that we can, if there's any confusion about how we did the document-by-document analysis, and I don't know that there could be in the district court level, but I think Judge Rupert would probably assign it to Special Master Merenstein, and we would sit down and go document-by-document. And I'm confident that this stuff would never be put out in the public. Okay. But will you agree that the district court did not, in fact, conduct a common law right-of-access discussion and review here? That the mere reference in the footnote to common law right-of-access is not enough to constitute actual discussion and review pursuant to that standard? I think it's hard to say. If this was just a one-off case where there was no history, then I would absolutely be very hard-pressed to disagree with you. What are we supposed to review? That's maybe where the Chief is going. What are we supposed to review other than a footnote if there was a robust analysis done? I understand the point. I think that in the same way that class action people get a little special treatment sometimes in the law, having the fact that you have a 10-year MDL judge that knows what she's doing and was given another MDL because of it, that we can trust her when she's citing the standard that she says she was applying, that she applied it. I mean, if you look at it, why would this be public? She definitely put certain documents out there. She disagreed with us on some things. She didn't just blankly say, I'm sorry. It makes it tough for anybody to review. That's the problem. What are we reviewing? I think you're reviewing the fact that the judge has been looking at these documents for a very long time, said no to some of the things we wanted to keep confidential. We don't know any of that based on her order. Do we? I'm an advocate, so I'm going to just be honest about that. Really? I'm shocked to hear such an admission. We're gambling here. So my sense is that knowing Judge Roof the way I do and knowing the experience that she has brought to bear on this case and seeing her do this in the other setting, she was just applying what she had done before. We weren't there, though. We all know Judge Roof. I understand. There's no question about how good this person is. But in this particular case, what is there for us to review? Well, I think you can see that there were things that she did not keep confidential. And we had asked for a range of things to be prevented from being disclosed. She said no on some of those things. And you can see why she did it. They were relevant to her decision. Some of the things that she thought were relevant to understanding her preemption analysis, which is what the summary judgment, going back to Judge Smith's original question, if it was part of the record on the summary judgment, then she's not going to stand in the way of that going out there. But when she sees all the kinds of other nonsense that was submitted, I think she justifiably said enough. Any other questions? Thank you. Thank you very much, Mr. Fahey. Ms. Brennan? Ms. Brennan, I just heard that class action plaintiffs or class action counsel sometimes get special treatment. I teach a class action seminar. I'm going to tell my students that next semester. I appreciate that, Your Honor. When you look at the types of harm, give me real world examples. What's the difference between reputational harm and competitive harm? Because it would seem that one could argue if there's reputational harm, it would affect your competitive standing. So the difference between competitive harm and reputational harm I think is very well laid out in the Supreme Court's decision in Monsanto v. Ruckelshaus. Actually, it should be inverted. Where the purpose of confidentiality orders is to protect a party from having its trade secrets or other information that would sort of denigrate the company's competitive edge over its competitors. Reputational harm. So it's like the Coke formula. Exactly. And so that's the type of information that can be protected. If, for example, I gathered a bunch of data and that data allowed me to improve my product, and if that data was disclosed, the competitor would be able to improve their product, that's what can be kept secret. Reputational harm is, and I want to quote the Supreme Court here. So the Supreme Court said that if there's a decline in profits that stems from a decrease in the value of the product to consumers, rather from the destruction of the edge the company has over its competitors, that cannot be considered. That's exactly what we have here. We have GSK concerned that if this information comes out, it's going to harm its reputation with doctors and patients, and for good reason. It's hard to trust a company that concealed so much information. And if the public had had access to this information in the first place, we wouldn't be here today. I want to go back and address, if I may, one of the points that opposing counsel made, which is that it's not like the history that has been referred to here, I think by both sides to some extent, has not already revealed to the public in the past quite a bit about Evandia, about the practices that led to whatever wrongs and harms occurred here. So your suggestion that seems to be the public needs to know has perhaps been taken care of by way of the history, not only of the litigation, but the reporting of the litigation. Anybody who wants to go online can learn quite a bit, right? I think there's a crucial point to make here. First, before I address your question head on, I want to point out again that it's not our burden to justify need for the documents. But moving past that, what I'd submit here is that any information that's public right now has removed any competitive harm these documents could do to GSK. But what it has not done is give the public access to the details, the primary source records of what went on here. And our amicus says to this court, if we can have access to these documents, we'll better understand Evandia's safety, we'll better understand how GSK interacted with the FDA. These documents will provide a critical informational role that will allow the public to play its fact-checking role. So both the common law and the First Amendment envision this fact-checking role for the public so that the public can have confidence in its governmental agencies, like the FDA, but also like the courts. The information that's contained in these documents needs to become public so that the public can play that role that both of these standards envision. And if I may just move back to the point that opposing counsel made. Opposing counsel is repeatedly impugning the plaintiff's motives. Again, plaintiff's motives are not at issue here, and I would submit that the record here is very important. We have not submitted materials that are not relevant to this case, as GSK argues. Are you suggesting, aside from what you just said about any lack or suggestion of any lack of improper motives, are you suggesting that the court cannot take into account motive? I understand who has the burden, but you're not suggesting that that cannot be a factor at all in these cases, are you? Courts of appeals have, when they address the common law right of access, said that the motives of the party seeking access, usually, oftentimes newspapers, are not at issue because that would subjugate the public's interest in access to the courts to the motives of the person bringing the case. Here, we have a summary judgment record that's devoid of the plaintiff's side of the case. The only documents that are public in this case are the district court's opinion and GSK's redacted back proper. The district court has specifically asked for GSK's back proper to be put into the record publicly, but not the plaintiff's. In order for the public to have a full understanding of the proceedings in this case, these documents need to be made public. Thank you very much, Mr. Vernon, Mr. Fahey. We will take the case under advisement.